IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CHRISTIAN ALBERTO SANTOS GARCIA, | ) )  ) |
| Petitioner, | ) ) |
| v. | ) ) Civil Action No. 1:21-cv-742 (RDA/IDD) |
| MERRICK GARLAND, *et al.*, | ) ) ) |
| Respondents. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Petition for Writ of Habeas Corpus (Dkt. 1) brought by Christian Alberto Santos Garcia ("Petitioner" or "Mr. Santos Garcia") and the federal Respondents' Motion for Summary Judgment (Dkt. 11).[1] This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). Considering the Petition and the Motion together with Petitioner's Opposition (Dkt. 16) and Respondents' Reply (Dkt. 18), the Court grants in part and denies in part Mr. Santos Garcia's Petition and denies Respondents' Motion for Summary Judgment for the reasons that follow.

I. BACKGROUND

Respondents, pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56, set forth a statement of material facts that they contend are undisputed. In response, Petitioner

---

[1] Respondents are Merrick Garland, in his official capacity as Attorney General of the United States; Alejandro Mayorkas, in his official capacity as Secretary of the Department of Homeland Security; Tae Johnson, in his official capacity as Acting Director of Immigration and Customs Enforcement; Jean King, in her official capacity as Acting Director of the Executive Office for Immigration Review; Shawn Byers, in his official capacity as Acting Field Office Director of Immigration and Customs Enforcement and Removal Operations' Washington Field Office; and Jeffrey Crawford, in his official capacity as Director of the ICA-Farmville Detention Center. *See* Dkt. 1.

complied with his obligations under those rules by submitting statements of undisputed and disputed facts. Accordingly, the following statement of uncontested facts is derived from a review of Respondents' statement of undisputed facts, Petitioner's response, Petitioner's admissions, and the record.[2]

### A. Petitioner's Immigration Background and Criminal History

Petitioner Christian Alberto Santos Garcia is a 24-year-old citizen of El Salvador. He came to the United States on December 14, 2012, illegally as an unaccompanied minor. Dkt. 12-1 ¶ 5. Within a week, he was arrested by Customs and Border Protection officers and was issued a Notice to Appear, which charged him with being removable from the United States under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being inspected, admitted, or paroled by an immigration official. *Id.* ¶ 6. On December 18, 2012, CBP transferred Petitioner to the custody of the Office of Refugee Resettlement ("ORR") as an unaccompanied child. On or about January 16, 2013, ORR reunified Santos Garcia with his mother and released him to her care. *Id.* ¶ 7.

On or about August 6, 2015, Petitioner was arrested by local law enforcement on five counts of felony street gang participation and five counts of misdemeanor destruction of property with intent. On January 7, 2016, Petitioner was found guilty of two of the misdemeanor counts, receiving a 90-day sentence with 89 days suspended. All of the felony charges and the three remaining misdemeanor charges were nolle prossed. *Id.* ¶ 10. Separately, on September 15, 2015, Petitioner was convicted in absentia of possession of marijuana, in violation of Virginia Code §

---

[2] Certain legal and factual contentions contained in Petitioner's counterstatement of undisputed facts are drawn from Petitioner's immigration proceedings, which are unreviewable by this Court and therefore excluded from the undisputed material facts considered on summary judgment. *See* 8 U.S.C. § 1252(b)(9).

18.2-250.  Petitioner was never arrested or fingerprinted on this charge, however, and, it did not enter into his criminal background report.  *Id.* ¶ 9.  Petitioner was detained by Immigration and Customs Enforcement ("ICE") on January 8, 2016 related to the misdemeanor convictions  *Id.* ¶ 12.

At a February 2, 2016 immigration hearing, Petitioner admitted and conceded the charges listed on his Notice to Appear.  His attorney asked the court for bond, which the Immigration Judge denied.  *Id.* ¶ 13.  Petitioner's subsequent request for bond on April 5, 2016, was similarly denied by the Immigration Judge.  The court granted Petitioner's request for voluntary departure, ordering him to leave the country by May 5, 2016.  *Id.* ¶ 14.

Petitioner complied with this order and left the country on April 27, 2016.  *Id.* ¶ 15.  He unlawfully returned to the United States, however, around September of 2016.  *Id.* ¶ 16.  ICE arrested Petitioner and issued a new Notice to Appear on November 20, 2016.  *Id.* ¶ 17.  When Petitioner appeared for a hearing before an immigration judge on January 4, 2017, he sought release on bond.  The court granted Petitioner a $6,500.00 bond.  He posted the bond and was then released from immigration custody.  *Id.* ¶ 20.  Then, on August 10, 2017, Petitioner was again arrested by ICE in a targeted operation based on information from local law enforcement that he was suspected of recruiting 18th Street Gang participants for the murder of a MS-13 gang member.

## B. Petitioner's Removal Proceedings

On December 20, 2016, Petitioner, through counsel, filed an application for Asylum, Withholding of Removal, and protection under the Convention Against Torture.  *Id.* ¶ 19.  Petitioner's asylum application was granted on December 22, 2017 by an immigration judge.  The Department of Homeland Security appealed this decision, and on June 13, 2018, the Board of Immigration Appeals ("BIA") reversed the Immigration Judge's grant of asylum and remanded

Petitioner's case for a finding as to whether Petitioner qualified for withholding of removal and protection under the Convention Against Torture. *Id.* ¶ 27. On remand, the Immigration Judge granted withholding of removal but denied Petitioner protection under the Convention on Torture. The Department of Homeland Security again appealed to the BIA. On April 5, 2019, the BIA sustained DHS's appeal and again remanded Petitioner's case. *Id.* ¶¶ 29-30.

On remand, the Immigration Judge ordered Petitioner removed to El Salvador while also granting his application for withholding of removal and his application for protection under the Convention Against Torture. Again, the Department of Homeland Security appealed the Immigration Judge's decision. On appeal, the BIA reversed and remanded the case to the Immigration Judge for additional consideration of Petitioner's claim to withholding of removal based on account of an imputed political opinion. *Id.* ¶¶ 34-38. After this third remand, on June 25, 2021, the Immigration Judge denied Petitioner's application for withholding of removal and ordered that he be removed to El Salvador. *Id.* ¶ 42. Petitioner appealed the Immigration Judge's decision on July 13, 2021. *Id.* ¶ 43.

C. Petitioner's Immigration Detention

Petitioner has been in ICE detention at Farmville Detention Center in Farmville, Virginia since August 10, 2017. Dkt. 1 ¶ 3; Dkt. 12-1 ¶ 44.[3] One month into his detention at Farmville, on September 12, 2017, Petitioner moved for release on bond. The Immigration Judge denied this request, finding that Petitioner posed a danger to the community. Dkt. 12-1 ¶ 23. On May 5, 2021, Petitioner filed a written motion seeking reconsideration of the September 12, 2017 denial of bond, which the Department of Homeland Security opposed. Dkt. 12-1 ¶ 40; *see also* Dkt. 1 ¶ 35.

---

[3] Petitioner is also the lead plaintiff in a separate lawsuit challenging the conditions of confinement at Farmville Detention Center, *Santos Garcia v. Mayorkas*, 1:20-cv-821 (E.D. Va.).

Another hearing was held on May 12, 2021. Following argument by Petitioner's counsel and the Department of Homeland Security, the Immigration Judge denied Petitioner's request for a custody redetermination, finding that there had been no material change in circumstances and in the alternative held that Petitioner was subject to mandatory detention.

On June 1, 2021, Petitioner commenced this action by filing a Petition for Writ of Habeas Corpus in this Court. Dkt. 1. On July 30, 2021, Respondents filed a Motion for Summary Judgment. Dkt. 11. Petitioner opposed the Respondents' Motion for Summary Judgment on August 13, 2021. Dkt. 16. Respondents filed a reply in support of their Motion for Summary Judgment on August 20, 2021. Dkt. 18.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Hantz*, 11 F. Supp. 3d at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence and draws all reasonable inferences

5

in the light most favorable to the non-moving party. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)); *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).  This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Jacobs*, 780 F.3d at 570.  "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.  A "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

In his petition, Petitioner sets forth a single claim for relief: that his continued detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution.  Dkt. 1 ¶¶ 74-79.  He does not challenge the Immigration Judge's finding that he is subject to mandatory detention under § 1226(c).  He also does not argue that his initial detention by ICE was

6

unconstitutional. Petitioner instead argues that now, more than four years after he was first detained, his continued detention—without an individualized assessment of whether he currently poses a danger to the community or a flight risk—violates his constitutional right to due process. To remedy his prolonged mandatory detention, Petitioner argues that due process requires his immediate release, or alternatively, that the Government establish at an individualized bond bearing that clear and convincing evidence supports his detention, taking into account Petitioner's flight risk and ability to pay. *Id.* ¶ 77.

In response, Respondents request that this Court grant summary judgment in their favor. *See generally* Dkt. 12. They contend that Petitioner's continued mandatory detention pursuant to 8 U.S.C. § 1226(c) comports with due process, that the Fifth Amendment does not entitle Petitioner to either release or a bond hearing, and that the standard set forth in *Demore v. Kim*, 538 U.S. 510 (2003), determines whether Petitioner's detention is constitutionally permissible. They also state that Petitioner's May 2021 hearing before an immigration judge, which does not appear to have been a traditional bond hearing, means that he is not constitutionally entitled to an individualized bond hearing now.[4] Although Respondents contest that the *Portillo v. Hott*, 322 F. Supp. 3d 698 (E.D. Va. 2018) line of cases supplies a rule of decision in this case, they argue in the alternative

---

[4] Specifically, Petitioner maintains that this was merely a "threshold hearing" and that the Immigration Judge "did not have a chance to review dangerousness, flight risk, or other merits factors." Dkt. 16 at 14 n.5. Respondents disagree with this characterization, stating that it is a "semantic distinction" and that the Immigration Judge "effectively heard and evaluated whether the Petitioner was entitled to bond," Dkt. 18 at 2, which suggests the May 2021 hearing deviated at least somewhat from a typical bond hearing.

Respondents also argue in their Motion that this "recent hearing" cut against relief. Whatever its force when Respondents filed their Motion and reply brief, this ground for rejecting the Petition's request for an individualized bond hearing is unavailing given the fact that nearly eleven months have now passed since Petitioner's May 2021 immigration hearing.

that Petitioner's continued detention is reasonable even under *Portillo*'s five-part framework. *Id.* at 22-25.

### A. Petitioner's Detention under *Demore*

All parties agree that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). *See* Dkt. 12 at 10 n.4; *see also* Dkt. 16 at 14. The Court finds that § 1226(c) is the statutory authority for Petitioner's detention. That section of the Immigration and Nationality Act ("INA") governs the detention of an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. 1226(a). Those "who are arrested and detained may generally apply for release on bond or conditional parole." *Guzman Chavez*, 141 S. Ct. at 2271. But § 1226(c) sets out mandatory terms of detention. *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018) (quoting 8 U.S.C. § 1226(a). For those detained pursuant its authority, "[r]elease is authorized 'only if the Attorney General decides . . . that release of the alien from custody is necessary' for witness-protection purposes 'and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.'" *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 277 (3d Cir. 2018).

Suffice it to say that the Court is deeply troubled by the amount of time Petitioner has been detained without any final resolution of his circumstances. It cannot be reasonably disputed that the history of this case is reminiscent of the movie *Groundhog Day*. Each day Petitioner is detained is being taken for granted without any appreciation of the recurring time loop in which Petitioner remains detained without resolution of his status. The Court is, however, very sensitive to Respondents' perspective and that Petitioner's history raises a litany of very serious concerns.

In this regard, because it is clear that Petitioner is detained under § 1226(c), this Court must determine whether, after remaining in ICE detention for fifty-five months, Petitioner is constitutionally entitled to an individualized bond hearing. Under the Fifth Amendment, no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (internal citations omitted). And "it is well-established that aliens detained under § 1226 must receive bond hearings if their lengthy detentions violate Due Process." *Bah v. Barr*, 409 F. Supp. 3d 464, 467 (E.D. Va. 2019) (internal citation omitted). The Court must therefore assess whether Petitioner's continued detention without an individualized bond hearing raises due process concerns.

Respondents fashion a "purpose-based standard" derived from *Demore* and argue this standard definitively resolves Petitioner's due process claim in their favor. According to Respondents, "[u]nder *Demore*, mandatory detention under § 1226(c) is constitutional as long as it continues to serve its purpose of preventing the risk of flight or dangerousness." Dkt. 12 at 15 (citing *Demore*, 538 U.S. at 528). It is difficult to imagine a mandatory detention scenario that would fail this purposive standard given Respondents' contention that these "two concerns [] are present throughout the removal proceedings." Dkt. 12 at 15. It is also difficult to square this position with the language of *Demore* itself.

In *Demore*, the Supreme Court acknowledged "its longstanding view that the Government may constitutionally detain deportable aliens during the *limited* period necessary for their removal proceedings." 538 U.S. at 526 (emphasis added). *Demore* also observed that detention under § 1226(c) has "a definite termination point," and that "the detention at stake under § 1226(c) lasts

9

roughly" between "a month and a half . . . and about five months." *Demore*, 538 U.S. at 528-530; *see also Bah*, 409 F. Supp. 3d at 470. As this Court noted in *Bah*, the *Demore* majority decision was qualified by a concurring opinion that recognized "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Bah*, 409 F. Supp. 3d at 470 (quoting *Demore*, 538 U.S. at 532-33) (Kennedy, J., concurring)). *Demore* concerned the detention of an individual for a period that was "somewhat longer than the average—spending six months in INS custody prior to the District Court's order granting habeas relief." 538 U.S. at 530-31.

A period of fifty-five months in ICE custody is neither "a limited period" of detention nor one that falls anywhere near the heartland of detentions deemed presumptively reasonable in *Demore*: those lasting up to about five months, or an above-average length of six months. 538 U.S. at 526, 530-31. In other cases where a detainee is subject to mandatory detention under § 1226(c), due process concerns may attach to a period of detention that becomes "unreasonable or unjustified" such that it "become[s] necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532-33; *see also Borbot*, 906 F.3d at 278 ("*Jennings* did not call into question our constitutional holding in [a pre-*Jennings* case] that detention under § 1226(c) may violate due process if unreasonably long."). At bottom, the question of "whether an alien's detention without a bond hearing violates Due Process requires a balancing of petitioner's liberty interest against respondents' interest in protecting the public and ensuring petitioner's presence at removal proceedings." *Bah*, 409 at 471.

10

B. The *Portillo* Factors

The *Portillo* balancing test is necessarily fact-dependent, and multiple factors assist courts undertaking that inquiry. The five factors are: (1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final removal order. *Portillo*, 322 F. Supp. at 707.

This first factor regarding the duration of detention "is the most important." *Id.* Petitioner has now been held continuously in civil detention since August 10, 2017—more than fifty-five months. It appears that of all the habeas petitioners who have ever sought relief in this Court during their prolonged detentions in immigration custody, this Petitioner has awaited resolution of his proceedings for the longest period of time. In this District, immigration detainees subject to detention periods far less lengthy than Petitioner's fifty-five month period have been granted individualized bond hearings. *See, e.g.*, *Khan v. Byers*, No. 1:21-cv-764, 2021 WL 4973249 (E.D. Va. Oct. 22, 2021) (granting relief after petitioner had been continuously detained for three years); *Martinez v. Hott*, 527 F. Supp. 3d 824, 836 (E.D. Va. 2021) (same, for detention of sixteen months); *Cardona Tejada v. Crawford*, No. 1:21-cv-314, 2021 WL 2909587, at *4 (E.D. Va. May 19, 2021) (same, for detention of twenty-five months); *Songlin v. Crawford*, No. 3:19-cv-895, 2020 WL 5240580, at *6 (E.D. Va. Sept. 2, 2020) (same, for detention of sixteen months); *Palomares v. Barr*, No. 1:19-cv-1428 (Dkt. 28) (E.D. Va. Feb. 19, 2020) (same, for detention of more than two years); *Gutierrez v. Hott*, 475 F. Supp. 3d 492, 494-96, 499 (E.D. Va. 2020) (same, for detentions of 23 and 28 months); *Portillo v. Hott*, 322 F. Supp. 3d 698, 706 (E.D. Va. 2018)

(same, for detention of fourteen months); *Mauricio-Vasquez v. Crawford*, No. 1:16-cv-1422, 2017 WL 1476349, at *4 (E.D. Va. Apr. 24, 2017) (same, for detention of fifteen months).

Aside from decisions rendered in comparable cases in this District, Petitioner's period of detention far exceeds the presumptively reasonable period the Supreme Court set forth in *Demore*. That period passed long ago, and Petitioner's fifty-five month detention is at least *eleven* times longer than the benchmark the Supreme Court set for measuring the constitutionality of such detentions. *See Haughton v. Crawford*, No. 1:16-cv-634, 2016 WL 5899285, at *9 (E.D. Va. Oct. 7, 2016) ("Although there are no hard and fast parameters, courts seem to agree that 'the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [the one and a half month average and five month maximum] thresholds' cited by the Supreme Court in *Demore*.") (internal citation omitted).

Even if the May 12, 2021 hearing could be construed as a bond hearing, as Respondents suggest, nearly eleven additional months have now passed since that hearing with no apparent change in Petitioner's status. Assuming for present purposes that the May 12, 2021 hearing afforded Petitioner the process he was due, the theoretically constitutionally acceptable time in which Petitioner is able to remain in custody without a bond hearing under present conditions has now passed. *See, e.g.*, *Demore*, 538 U.S. 510, 530 (2003) (stating that "the detention at stake under § 1226(c) lasts roughly" between "a month and a half . . . and about five months"); *see also Portillo*, 322 F. Supp. 3d at 707. At this point, Petitioner's long-lasting detention bears little resemblance to the ordinary cases of detention under § 1226(c) such that it appears "unreasonable or unjustified." *Bah*, 409 F. Supp. 3d at 470 (quoting *Demore*, 538 U.S. at 532-33) (Kennedy, J., concurring)).

12

As for the second factor—whether civil detention exceeds criminal detention for the underlying offense—Respondents concede that "Petitioner's detention . . . exceeds the sentences that he could have served for his underlying convictions (90 days)." Dkt. 12 at 23. This factor plainly weighs in Petitioner's favor.

Turning to the third and fourth factors, the Court inquires whether either of the parties employed dilatory tactics in bad faith or were responsible for procedural or substantive legal errors that significantly extended the length of Petitioner's detention. As to Petitioner, his counsel asked for a 21-day extension to the briefing schedule during the Department of Homeland Security's third appeal to the BIA. This requested three-week extension, while Petitioner's counsel was out on parental leave, is not the sort of bad-faith dilatory tactic that can be said to seriously weigh against Petitioner under the *Portillo* factors. *Martinez*, 527 F. Supp. 3d at 837 (finding this factor in equipoise where petitioner sought multiple extensions). Concluding otherwise "would impermissibly penalize an alien's exercise of his legal rights and does not mitigate the Due Process concerns at issue." *Id.*

For their part, Respondents acknowledge that "the BIA faced a particularly acute backlog of cases" because of the pandemic and took an inordinately long period of time to rule on Petitioner's case. Dkt. 12 at 17 n.7, 24. Whether this delay can be directly imputed to Respondents is a more complex question, as we all have been challenged by the ongoing pandemic. But the Attorney General of the United States, who heads the department in which the BIA is based and is a named respondent in this action, shoulders at least some of the responsibility.[5] Accordingly,

---

[5] Although Petitioner has appealed the most recent ruling by an immigration judge, it was the Department of Homeland Security that twice appealed earlier adverse rulings, as was undeniably the Government's right. This Court never faults any party for exercising its procedural right to obtain appellate review, but it must be noted that the Government's appeals to the BIA have also prolonged the present uncertainty regarding Petitioner's immigration status.

the Court finds that the third and fourth *Portillo* factors weigh marginally in Petitioner's favor, as any delay—however justifiable due to pandemic-related backlogs—is ultimately attributable to Respondents and their components.

As for the fifth *Portillo* factor, both parties predict that the BIA will rule in their favor. And based on the split decisions in earlier BIA appeals of Petitioner's immigration proceedings, both sides have at least some cause for confidence. At this stage, however, with removal proceedings still ongoing and in light of the mixed appellate record the Court has reviewed, it is speculative to presume that the BIA will necessarily rule in Petitioner's favor. Therefore, this factor stands in equipoise.

Considering the relevant case law and the five-factor *Portillo* test, Petitioner's continued detention without a bond hearing is unreasonable and unjustified under the Fifth Amendment. Petitioner is therefore entitled to an individualized bond hearing. The hearing shall follow existing bond procedures; this Court declines to engraft upon its order any procedural requirements or consideration of remedies that extend beyond those well-established bond regulations an immigration judge applies in the ordinary course. *See Portillo*, 322 F. Supp. 3d at 709 ("[A]t the bond hearing, the government must demonstrate that [petitioner] is either a flight risk or a danger to the community by clear and convincing evidence.").

### C. *Matthews v. Eldridge* Test

Recognizing that immigration detention "is a form of civil detention," *Khan*, 2021 WL 4973249, at *4 (quoting *Zadvydas*, 533 U.S. at 689), this Court in its procedural due process

analysis alternatively looks to the three-part test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[6] That well-known standard requires courts to weigh three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* Under the facts of this case, all three *Mathews* factors also tip in Petitioner's favor.

First, "the private interest that will be affected by the official action" is Petitioner's liberty interest. This "interest in bodily liberty [] is undoubtably 'the most significant liberty interest there is.'" *Cardona Tejada*, 2021 WL 2909587 at * 3 (internal citations omitted). As the Supreme Court has acknowledged, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. There can be no serious dispute that Petitioner's liberty interest cuts in favor of his request for a bond hearing.

The second *Mathews* factor looks to "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and this factor likewise supports Petitioner's request for a bond hearing. *See Mathews*, 424 U.S. at 335. Following *Zadvydas*, other courts have "sensibly recognized that 'as the period of . . . confinement grows,' so do the required procedural protections no matter what

---

[6] This Court acknowledges that *Khan* and *Cardona Tejada* applied the *Mathews v. Eldridge* test in the context of deciding *discretionary* detention cases under § 1226(a), not *mandatory* detention under § 1226(c) like this one. Even so, the Court applies this alternative framework in light of Respondents' argument that they "do not concede that the balancing test set forth in *Portillo* is the correct standard" and their citation of *Mathews*. *See* Dkt. 18 at 10-14. Other courts evaluating prolonged civil detentions have also applied the *Mathews* framework. *See Hernandez-Lara v. Lyons*, 10 F. 4th 19, 27-35 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d. Cir. 2020).

level of due process may have been sufficient at the moment of initial detention." *Cardona Tejada*, 2021 WL 2909587, at *3 (quoting *Velasco Lopez v. v. Decker*, 978 F.3d 842, 853 (2d. Cir. 2020)). At this point, Petitioner has been detained in ICE custody since August 10, 2017, more than four years. The value of a bond hearing at this juncture, when "the end to detention is uncertain," is strong; this Court has observed in a similar case that with the passage of time "there is most certainly a heightened risk that Petitioner is being erroneously deprived of his strong interest in bodily liberty." *Cardona Tejada*, 2021 WL 2909587, at *3. "Moreover, subsequent bond hearings provide an important check against erroneous deprivations of liberty." *Khan*, 2021 WL 4973249, at *4. At another bond hearing, the Immigration Judge will have the opportunity to reevaluate whether Petitioner's continued detention is still warranted under well-established bond regulations.[7]

Finally, the Court looks to the Government's interest under the third *Mathews* factor. Of course, the Government has long-established interests in maintaining "orderly immigration proceedings" as well as "limiting the administrative burden of conducting a bond hearing." *Cardona Tejada*, 2021 WL 2909587, at *4. In certain cases, even these interests are overborn by extraordinary facts. Surely, a fifty-five month period of ICE detention is extraordinary. *See id.* ("Although the third *Mathews* factor would ordinarily favor Respondents, that cannot be the case here, as Petitioner's prolonged, indefinite, and unreasonable detention comports neither with the Fifth Amendment nor the ordinary operation of the INA."). The calculus may differ when the only remedy an immigration detainee seeks in a federal district court is outright release from detention. But here, where the habeas petition also seeks "the opportunity to present his case for release to

---

[7] Importantly, "[t]he Court is not reviewing or setting aside the immigration judge's alleged findings" at the May 2021 hearing and is instead ordering that a bond hearing based on current circumstances be held. *Cf. Gutierrez*, 475 F. Supp. 3d at 500.

16

an Immigration Judge," the Government's "administrative burden of conducting such a bond hearing is minimal." *Khan*, 2021 WL 4973249, at *5.

## IV. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Petitioner's Petition for a Writ of Habeas Corpus is GRANTED IN PART and DENIED IN PART. Specifically, the Petition is GRANTED insofar as the Court finds that Petitioner's fifty-five-month detention without an individualized bond hearing violates the Fifth Amendment's Due Process Clause, and the Petition is GRANTED insofar as Respondents must schedule a bond hearing before an immigration judge, which must be held within 30 days of the entry of this Memorandum Opinion and Order. The Petition is DENIED in all other respects; and it is

FURTHER ORDERED that Respondents' Motion for Summary Judgment (Dkt. 11) is DENIED; and it is

FURTHER ORDERED that Petitioner's Motion to Proceed *In Forma Pauperis* (Dkt. 2) is GRANTED; and it is

FURTHER ORDERED that Petitioner's Motion to Expedite (Dkt. 4) and Motion for Telephonic Status Conference (Dkt. 21) are DENIED as MOOT.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 31, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge

17